**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SHELBY CLARK, KEVIN | * | |
| WESLEY ANDERSON, WALI | * | |
| BASCOE, COREY BERRY, | * | |
| STEDRIC BROWN, BRYAN | * | |
| BUNYAN, LARRY CALHOUN, | * | |
| DUSTIN CANTRELL, QUINCY | * | |
| CANTRELL, SONIA CASH, | * | |
| CONCETTA CAUTELA, WILLIAM | * | |
| CHADWICK, DIIONE CLAY, | * | |
| MARKELL COLLINS, SHAWN | * | |
| COLLINS, MARQUISE CONNER, | * | |
| JOHN LEVI COOK, III, DARRIELL | * | |
| CROSS, XAVIER DANIELS, | * | |
| RAHMEEL DAVIS, TSHOMBE | * | |
| DAVIS, JUSTIN DUCHATELLIER | * | CIVIL ACTION FILE NO: |
| PATRICK BRYAN ECHOLS, | * | |
| MULUGETA EJIGU, JAMES | * | _____ |
| GLEATON, JACQUELYN GLASS, | * | |
| KELDA LISETTE GORDON, | * | |
| SHANNON GROSE, BRANDON | * | **COMPLAINT** |
| HADDOCK, IRENE HANDY, | * | **FOR DAMAGES** |
| CURTIS HARDY, DEMETRIUS | * | |
| HARLEY, MICHAEL HEACOCK, | * | |
| FELICIA HEISKELL, ALEXANDER | * | |
| HENRY, NATASHA HENDERSON, | * | |
| DIARA HOOD, JEFFREY | * | |
| HOWARD, DEVONTE JAMES, | * | |
| DEVAUGHN JONES, D'VONTE | * | |
| JORDAN, QUENTIN KEMP, | * | |
| JOSEPH KOLLMAN, WILLIAM | * | |
| LAGEMANN, GOWAYNE LAING, | * | |
| SASSIA LETT, RYAN LONG, | * | |
| RODOLFO LOPEZ, DONOVAN | * | |
| LOWE, BRANDON MAHOME, | * | |

DEVON MARION, SHANE
MATTADEEN, CHAUNCEY
MCCALLA, GREGORY
MCCORMICK, MATHIAS
NWAGBARA, JAMON O'NEIL,
JUSTIN OWEN, MIGUEL
PEREZ, IVAN PROKOPOVICH,
DONALD MICHAEL REEVES,
JONATHAN RILEY, CURTIS
ROGERS, CLIFFORD ROUSSEAU,
HOSEA SCOTT, NICOLE SMITH,
TERRY SMITH, DARCE STELLY,
NICOLAS STEWART, BRANDON
TURNER, MELISSA WARD,
JUSTICE LAMAR WARREN-
FRANKLIN, JULIAN WILLIAMS,
MARY WILSON, RASHIDA
WOMACK, and WILLIAM
GERALD YOUNG,

     *Plaintiffs,*

v.


R.L. "BUTCH" CONWAY,
Sheriff of Gwinnett County, Georgia,

and

LT. COL. CARL SIMS,
Commander of the Rapid Response
Team at the Gwinnett County Jail,

     *Defendants.*

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

2

TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................... 6

II.     JURISDICTION AND VENUE ....................................................... 6

III.    PARTIES .................................................................................... 7

IV.     FACTS RELATING TO DEFENDANTS .......................................... 8

V.      FACTS RELATING TO PLAINTIFFS ............................................ 15

A.      Shelby Clark ............................................................................ 15

B.      Wali K. Bascoe ........................................................................ 16

C.      Corey Berry ............................................................................. 18

D.      Stedric Brown .......................................................................... 19

E.      Bryan Bunyan .......................................................................... 20

F.      Larry Calhoun ......................................................................... 22

G.      Dustin Cantrell ........................................................................ 23

H.      Quincy Cantrell ....................................................................... 24

I.      Sonia Cash .............................................................................. 26

J.      Concetta D. Cautela ................................................................ 27

K.      William Chadwick .................................................................... 29

L.      Kevin Wesley Anderson ............................................................ 30

M.      Diione Clay ............................................................................. 33

N.      Markel Collins .......................................................................... 34

O.      Shawn Collins .......................................................................... 35

P.      Marquise Conner ...................................................................... 38

Q.      John Levi Cook, III ................................................................... 39

R.      Darriell Cross .......................................................................... 40

S.      Xavier Daniels .......................................................................... 41

T.      Rahmeel Davis .......................................................................... 42

U.      Tshombe Davis .......................................................................... 43

V.      Justin Duchatellier .................................................................... 45

W.   Patrick Bryan Echols ................................................................. 46

X.   Mulugeta Ejigu ......................................................................... 48

Y.   Jacquelyn Glass ........................................................................ 50

Z.   James Gleaton ........................................................................... 51

AA.  Kelda Lisette Gordon ............................................................... 52

BB.  Shannon Grose .......................................................................... 53

CC.  Brandon Haddock ..................................................................... 54

DD.  Irene Handy .............................................................................. 55

EE.  Curtis Hardy ............................................................................. 57

FF.  Demetrius Harley ...................................................................... 58

GG.  Michael Heacock ...................................................................... 60

HH.  Felicia Heiskell ........................................................................ 61

II.   Natasha Henderson ................................................................... 62

JJ.  Alexander Henry ....................................................................... 65

KK.  Diara Hood ............................................................................... 66

LL.  Jeffrey Howard ......................................................................... 69

MM.  Devonte James .......................................................................... 70

NN.  Davaughn Jones ........................................................................ 72

OO.  D'Vonte Jordan ......................................................................... 73

PP.  Quentin Kemp ........................................................................... 74

QQ.  Joseph Kollman ........................................................................ 75

RR.  William Lagemann .................................................................... 78

SS.  Gowayne Laing .......................................................................... 79

TT.  Sassia Lett ................................................................................. 80

UU.  Ryan Long ................................................................................. 82

VV.  Rodolfo Lopez ........................................................................... 83

XX.  Brandon Mahome ..................................................................... 86

YY.  Devon Marion ........................................................................... 87

ZZ.  Shane Mattadeen ...................................................................... 89

4

AAA. Chauncey McCalla .................................................................... 90

BBB. Gregory McCormick .................................................................. 91

CCC. Mathias Nwagbara ..................................................................... 93

DDD. Jamon O'Neil ............................................................................. 94

EEE. Justin Owen ................................................................................. 95

FFF. Miguel Perez ................................................................................ 97

GGG. Ivan Prokopovich ....................................................................... 98

HHH. Donald Michael Reeves ............................................................ 100

III. Jonathan Riley ................................................................................ 101

JJJ. Curtis Lee Rogers .......................................................................... 102

KKK. Clifford Rousseau ....................................................................... 103

LLL. Hosea Scott .................................................................................. 104

MMM. Nicole Smith ............................................................................. 105

NNN. Terry Smith ................................................................................. 107

OOO. Darce Stelly ................................................................................ 108

PPP. Nicolas Stewart ............................................................................ 109

QQQ. Brandon Turner .......................................................................... 110

RRR. Melissa Ward .............................................................................. 112

SSS. Justice Lamar Warren-Franklin ................................................... 113

TTT. Julian Williams ............................................................................ 115

UUU. Mary Wilson ............................................................................... 116

VVV. Rashida Womack ......................................................................... 117

WWW. William Gerald Young .............................................................. 118

VI. EXCESSIVE FORCE CLAIM ......................................................... 120

VII. CLAIM FOR DAMAGES ............................................................... 121

VIII. PRAYER FOR RELIEF ................................................................. 122

## COMPLAINT FOR DAMAGES

COME NOW the above captioned Plaintiffs and file this Complaint against Defendants, showing the Court as follows:

### I.    INTRODUCTION

1.    By this action, Plaintiffs seek to recover damages for the unreasonable and excessive force inflicted upon them at the Gwinnett County Jail by a Rapid Response Team that was mobilized by Defendants to subject Plaintiffs and other pretrial detainees to unreasonable, unnecessary, and gratuitous pain in retaliation for loud, intoxicated, or alleged noncompliant behavior when said detainees were contained in a secure environment, were not posing a threat to the safety of themselves or others, and there was no present justification for the use of such force. Defendants are supervisors who have created and now perpetuate a policy of unlawfully permitting the Rapid Response Team to use unreasonable and excessive force with impunity. Defendants have not only condoned and failed to control unconstitutional activity by the Rapid Response Team, they have directed and encouraged it.

### II.    JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1343.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and

N.D.L.R. 3.1B(3) because the events and omissions giving rise to Plaintiffs' cause of action occurred within the Atlanta Division of the Northern District of Georgia, and because one or more of the parties reside within said district and division. All the parties herein are subject to the jurisdiction of this Court.

## III.   PARTIES

4.     The above captioned Plaintiffs (hereafter identified by last name or as "Plaintiffs") are or were, at all times relevant herein, residents of the Northern District of Georgia who were incarcerated as pretrial detainees in the Gwinnett County Pretrial Detention Center (hereafter "Jail") at the time of the incidents of excessive force complained of herein.

5.     Defendant R.L. "Butch" Conway (hereafter "Sheriff Conway" or "Conway") is, and was at all times relevant to this Complaint, the duly elected Sheriff of Gwinnett County, Georgia.

6.     Defendant Lieutenant Colonel Carl Sims (hereafter "Sims") is or was the Deputy Administrator of the Gwinnett County Jail, the Commander of the Jail's Rapid Response Team, and a supervisor acting under the authority or direction of Sheriff Conway who, at all times relevant herein, had supervisory authority over both the team and its members who were employed by the sheriff as detention officers at the jail.

7.     At all times relevant herein, said Defendants acted under color of state law and within the scope of their employment and authority as employees or agents of the Gwinnett County Sheriff's Department.

## IV.   FACTS RELATING TO DEFENDANTS

8.     At all times relevant herein, Sheriff Conway maintained a Rapid Response Team (hereafter "the RRT") that was established to provide a prompt tactical response in the event of a riot or other emergency within the jail and which has since come to be used to exert control over disruptive inmates.

9.     During the time frame relevant herein, Defendants have improperly used the RRT for unconstitutional purposes such as the unreasonable use of force and the wanton and unnecessary infliction of gratuitous pain against inmates who were deemed uncooperative but did not pose a threat justifying the use of force against them.

10.     At all times relevant herein, Defendants Sims and Conway have directed the RRT to engage in the systemic use of unreasonable and excessive force against Plaintiffs and other inmates, have trained the RRT to use unreasonable and excessive force against Plaintiffs and other inmates, have instituted procedures that caused the RRT to systematically use unreasonable and excessive force in violation of the constitutional rights of Plaintiffs and other inmates, and have condoned,

encouraged and approved such use of unreasonable and excessive force with deliberate indifference to the constitutional rights of Plaintiffs and other inmates.

11.    The use of unreasonable and excessive force by the RRT is so frequent, pervasive, and well documented that it rises to the level of a pattern or practice of using excessive force, which is tantamount to an official custom or policy that constitutes said Defendants' actual policy irrespective of what their written policy manual may represent to be their policy.

12.    For example, the jail's written use of force policy which was adopted or approved by Conway, or under authority delegated by Conway, states that officers in the jail should "use only that force which is necessary to maintain the security and safety of all persons, staff, and inmates," but it is clear in practice that the jail's actual policy is to tolerate excessive force by the RRT on a routine basis.

13.    The policy requires that the jail administrator review all uses of force in the jail, including planned and unplanned uses of force by the RRT, and that authority was delegated to Sims in his roles as deputy administrator, RRT commander, and/or other supervisory positions.  Despite having reviewed hundreds of RRT uses of force, Sims has never found any of them to be in violation of the jail's alleged use of force policy, which indicates that the incidents involving excessive force were all pursuant to the direction and training provided by

9

Defendants Sims and Conway.

14. The jail's written use of force policy also states that "no facility employees will strike or lay hands on any inmate except when it is necessary to prevent escape, to prevent injury to other persons and/or damage to property, to quell a disturbance, or as is otherwise necessary in the lawful discharge of their duties," but it is evident on a routine and near daily basis that the RRT is permitted, encouraged, and expected to "lay hands on" or otherwise use force against inmates where there is no justification for the use of force under the law or under the empty words of the policy, indicating that the custom, practice and actual policy of the jail is to give the RRT authority to use unreasonable and excessive force anytime it chooses.

15. To the extent that the jail's written use of force policy is actually followed rather than ignored, it encourages the RRT to use excessive force because it authorizes officers to use force to "quell a disturbance" without defining what a disturbance is, leading officers to believe that they can use force anytime an inmate makes noise even though the inmate poses no actual threat justifying the use of force under the law.

16. To the extent that it is followed at all, the written use of force policy is also defective because it leads officers to believe that they can enter a holding cell

and use force – thereby injuring an inmate – in order to prevent the inmate from injuring himself or herself, which has been cited on many occasions as the justification for the RRT to enter a holding cell and use force against an inmate who is knocking on the cell door to get the attention of a staff member. The written use of force policy specifically gives officers the authority to use restraints in response to self-harming behavior, and since the use of four-point restraints is a routine component of both planned and unplanned uses of force by the RRT, it is evident in practice that the Rapid Response Team equates the alleged justification for restraint with the alleged justification for force since they are routinely applied together. Both the alleged policy as written and the actual policy as applied in practice result in the unreasonable and unnecessary use of force, including prolonged restraint, against inmates.

17. Similarly, the jail's written use of force policy provides that "any staff member who encounters an uncooperative inmate" and is unable to persuade the inmate to cooperate using verbal communications "should never hesitate to summon assistance when necessary," which causes staff members to summon the RRT, which routinely uses excessive force without regard for whether the inmate's perceived lack of cooperation lawfully justifies the level of force used.

18. Defendants' custom, practice and policy as commanders, supervisors

and trainers of the RRT is that inmates subjected to the use of force are routinely placed in a restraint chair and continually restrained for a period of approximately four hours without regard for whether the use of force or restraints was justified in the first place, and without regard for whether prolonged continuous restraint is necessary for a four-hour period.

19. As commander of the RRT for most of the relevant time, as the principal trainer for most RRT members, and as a *de facto* supervisor of the RRT at all times relevant herein, Defendant Sims has actual knowledge of the fact that the RRT routinely uses unreasonable and excessive force against inmates, and he has in fact trained and directed the Team to use such force with deliberate indifference to the constitutional rights of Plaintiffs and other inmates.

20. As sheriff, Defendant Conway is the final decisionmaker and ultimate policymaker of the Gwinnett County Jail, responsible for the oversight, supervision and training of his deputies and detention officers. As sheriff, Defendant Conway has actual knowledge of the fact that the RRT routinely uses excessive force against inmates, has adopted or approved both formal and informal policies that have caused the RRT to use unreasonable and excessive force against Plaintiffs and other inmates, and has tolerated and condoned the use of excessive force by the RRT with deliberate indifference to the constitutional rights of Plaintiffs and other inmates.  At all times

12

relevant herein, Conway knew that it was foreseeable that Defendant Sims and the RRT under his command would violate the constitutional rights of inmates such as Plaintiffs by using excessive force against them, and Conway had actual knowledge that Defendant Sims and the RRT under his command were in fact using excessive force and violating constitutional rights of Plaintiffs and other inmates.

21.    Defendants Sims and Conway have caused the RRT to use unreasonable and excessive force against Plaintiffs and other inmates as demonstrated by the following facts:

- The fact that the RRT conducts itself in the same methodical manner in virtually every incident, which indicates that they are acting in accordance with training and not on a random or ad hoc basis.

- The fact that RRT members have acted exactly as they were trained to do, and they would have acted differently had they been trained differently.

- The fact that Conway has ultimate responsibility for making use of force policy for the jail, as well as making sure that the policy is enforced, but video recordings of RRT uses of force indicate that the jail's alleged written policy has not been enforced because they demonstrate that excessive force is routinely used;

- The fact that every use of force by the RRT has been approved by Sims as

being within policy, which would only be true if the policy was to condone the use of excessive force by the RRT;

- The fact that Defendants Sims and Conway have reviewed many RRT videos over the years but have never expressed criticism of the RRT's use of force, even though video evidence clearly shows that excessive force is routinely used; and

- The fact that until 2018, Defendants Sims and Conway had never disciplined an officer for excessive force during an RRT action, despite the fact that hundreds of incidents of excessive force had occurred over a period of several years, although at least one RRT member has been removed for complaining about the use of excessive force by another RRT member.

- The fact that Defendants Sims and Conway have continued to tolerate, condone, and encourage the use of excessive force by the RRT even after the United States Court of Appeals for the Eleventh Circuit ruled that the team's use of force under circumstances such as those alleged by Plaintiffs amounts to a federal constitutional violation, and Defendants have made no substantive changes in their policies or practices to bring the RRT's conduct into compliance with that ruling.

22.    Defendants Sims and Conway have directed, condoned, and caused the

14

use of unnecessary and excessive force by the RRT, which resulted in the use of unreasonable and unconstitutional force against Plaintiffs.

## V.  FACTS RELATING TO PLAINTIFFS

### A.  Shelby Clark

23.    On August 20, 2018, Plaintiff Shelby Clark was a pretrial detainee in the Gwinnett County Jail.  She was alone in a cell when force was used against her by the RRT.

24.    The incident occurred after Clark had been in the cell for an extended period of time, where she posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  They jumped on her, and while she was lying on the floor, several officers put their weight on her and deliberately applied pressure point techniques for the purpose of inflicting pain.

25.    One of the RRT members, Deputy Aaron Masters, struck her in the head with his fist in alleged retaliation for prior unruly conduct related to her mental illness, but there was no justification for the use of any force whatsoever by either Masters or the rest of the RRT at this time.  Deputy Masters is viewed on video punching Clark with a closed fist at least three times, while other deputies assisted Masters by restraining Clark while she was assaulted.  As a result of this beating, Clark suffered injuries to her legs, back, neck, face, head, and eye, including partial

vision loss.

26.    Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Clark remained nonviolent and did not offer any physical resistance of any kind.

27.    While Masters was subsequently terminated and charged with assault after a complaint made by Clark's family more than a week later, none of the other RRT members were disciplined in anyway despite their participation in the beating and subsequent cover-up, and despite their failure to report Masters' use of excessive force.  Even though Masters was allegedly arrested and released on bond his name does not appear in the Sheriff's docket book as having been arrested.

28.    As a result of said excessive force by the RRT, Clark sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**B.    Wali K. Bascoe**

29.    On April 4, 2012 and April 12, 2012, Plaintiff Wali K. Bascoe was a pretrial detainee in the Gwinnett County Jail.  On both occasions, he was alone in a

cell when force was used against him by the RRT. The first time was in a holding cell shortly after being arrested, and the second time was in an isolation cell.

30. Both incidents occurred after Bascoe had been in the cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning. They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

31. In the first incident, Bascoe was completely compliant but they threw a can of smoke in his cell, struck him in the face, put a knee in his back, and handcuffed him. In the second incident, Bascoe was yelling in solitary confinement but was not a physical threat to anyone. He suffers from a mental illness and was having an episode because he was not being given his medication.

32. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Bascoe remained nonviolent and did not offer any physical resistance of any kind.

33. Both times, the RRT then put Bascoe into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not

17

justified.

34.    As a result of said excessive force by the RRT, Bascoe sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**C.    Corey Berry**

35.    On February 24, 2016, Plaintiff Corey Berry was a pretrial detainee in the Gwinnett County Jail.  Upon information and belief, he was alone in a holding cell or other contained area when force was used against him by the RRT.

36.    Upon information and belief, Berry been in the cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

37.    Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Berry remained nonviolent and did not offer any physical resistance of any kind.

38.    The RRT then put Berry into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

39.    As a result of said excessive force by the RRT, Berry sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**D.    Stedric Brown**

40.    On approximately five separate occasions, including but not limited to February 4, 2014 and March 20, 2014, Plaintiff Stedric Brown was a pretrial detainee in the Gwinnett County Jail.  On all of those occasions, he was alone in a cell when force was used against him by the RRT.

41.    Each incident occurred after Brown had been in the cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

42.    Brown suffers from mental illness.  On at least one occasion he was

throwing feces, and it was in his hair. The RRT told him to get on the ground, and when he did so and was lying on his stomach, they hit him in the jaw, twisted his hands behind his back, and put a knee on his neck causing great pain.

43. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Brown remained nonviolent and did not offer any physical resistance of any kind.

44. Each time the RRT then put Brown into a restraint chair, there was no need for him to be placed in prolonged punitive restraint, yet they repeatedly left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

45. As a result of said excessive force by the RRT, Brown sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**E.    Bryan Bunyan**

46. On four separate occasions on February 26, 2013, November 17, 2015, January 7, 2016, and October 19, 2016, Plaintiff Bryan Bunyan was a pretrial

detainee in the Gwinnett County Jail. On all of those occasions, he was alone in a cell when force was used against him by the RRT.

47.     Each incident occurred after Bunyan had been in the cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning. They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

48.     Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Bunyan remained nonviolent and did not offer any physical resistance of any kind.

49.     Each time the RRT then put Bunyan into a restraint chair. There was no need for him to be placed in prolonged punitive restraint, yet they repeatedly left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

50.     As a result of said excessive force by the RRT, Bunyan sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including

21

medical expenses, lost income, and loss of earning capacity.

## F.   Larry Calhoun

51.   On June 27, 2014, Plaintiff Larry Calhoun was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

52.   The RRT was called because Calhoun had yelled at the officer who arrested him.

53.   The RRT put him in a headlock and twisted his neck painfully. They also slammed him face first into concrete while he was blindfolded.

54.   At the time that such force was used against him, he was alone in a contained environment and posed no present threat of injury or escape.

55.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Calhoun remained nonviolent and did not offer any physical resistance of any kind.

56.   The RRT put Calhoun into a restraint chair even though there was no need for him to be placed in prolonged punitive restraint, and they left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

57.   On the following day, June 28, 2014, the RRT further abused Calhoun

by dropping him on his head, causing a serious injury that required hospitalization.

58.   As a result of said excessive force by the RRT, Calhoun sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## G.   Dustin Cantrell

59.   On July 18, 2017, Plaintiff Dustin Cantrell was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

60.   Cantrell is a war veteran diagnosed with PTSD, and he believed that he had been falsely accused of DUI.

61.   Despite the fact that he was unhappy about being arrested, he was compliant and posed no threat; however, the RRT tackled him to the floor and applied pressure points all over his body to cause pain without visible injury. Because of his military experience, Cantrell knew about pressure points and reflexively reacted to the pain but did not actively resist.  Because of this, he was charged with resisting the officers but those charges were later dropped.

62.   At the time that such force was used against him, he was alone in a contained environment and posed no present threat of injury or escape.

23

63.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Cantrell remained nonviolent and did not offer any physical resistance of any kind.  The use of force under these circumstances amounted to torture, which Cantrell had been trained to recognize while serving in the military.

64.   The RRT put Cantrell into a restraint chair even though there was no need for him to be placed in prolonged punitive restraint, and they left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.  While he was restrained in the chair, he was denied the ability to use the restroom and was stripped of his clothes.

65.   As a result of said excessive force by the RRT, Cantrell sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## H.   Quincy Cantrell

66.   On four separate occasions on May 27, 2013, December 4, 2014, January 12, 2015, and October 15, 2017, Plaintiff Quincy Cantrell was a pretrial

detainee in the Gwinnett County Jail.  On all of those occasions, he was alone in a cell when force was used against him by the RRT.

67.    Each incident occurred after Cantrell had been in the cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  The RRT jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

68.    Quincy Cantrell has a history of mental health issues.  On one occasion the RRT shocked him with a Taser while he was lying on the ground, and then he was told, "If you don't put your hands behind your back, you'll be tazed again." Cantrell replied, "That doesn't affect me," so they tazed him again.

69.    Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Cantrell remained nonviolent and did not offer any physical resistance of any kind.

70.    On each occasion the RRT then put Cantrell into a restraint chair, when there was no need for him to be placed in prolonged punitive restraint. They repeatedly left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.  On one occasion the RRT squeezed his

25

testicles and shot him in the heart with a Taser while he was in the restraint chair.

71.    As a result of said excessive force by the RRT, Cantrell sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**I.    Sonia Cash**

72.    On March 31, 2013, Plaintiff Sonia Cash was a pretrial detainee in the Gwinnett County Jail when force was used against her by the RRT.

73.    Cash suffers from a mental illness and has limited ability to speak and understand English, which is not her native language.

74.    Despite the fact that she was unhappy about being arrested, she was compliant and posed no threat.  Cash had been in the cell for an extended period of time, where she posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  The RRT jumped on her, and while she was lying on the floor, several officers put their weight on her and deliberately applied pressure point techniques for the purpose of inflicting pain.  They also shot her in the head with what appeared to be rubber bullets.

75.    At the time that such force was used against her, she was alone in a

contained environment and posed no present threat of injury or escape.

76. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Cash remained nonviolent and did not offer any physical resistance of any kind.

77. The RRT put Cash into a restraint chair even though there was no need for her to be placed in prolonged punitive restraint, and they left her restrained in the chair for several hours without regard for the fact that such restraint was not justified.

78. As a result of said excessive force by the RRT, Cash sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## J.    Concetta D. Cautela

79. On December 23, 2017, Plaintiff Concetta Cautela was a pretrial detainee in the Gwinnett Jail when force was used against her by the RRT.

80. When she arrived at the jail, RRT members were waiting for her at the sallyport. Two RRT members removed her from the patrol car, spread her legs widely, and frisked her.

27

81.   Then the RRT took Cautela to a holding cell and told her to get down on her knees.  Cautela, a 64-year-old woman with arthritis, responded that she was going to need help getting down on her knees.  Then the RRT members suddenly and without warning kicked her feet out from under her and forced her to make a hard landing with her knees on the concrete floor.

82.   At the time that such force was used against her, she was alone in a contained environment and posed no present threat of injury or escape.

83.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Cautela remained nonviolent and did not offer any physical resistance of any kind.

84.   As a result of being subjected to this unnecessary and excessive force by members of the Rapid Response Team, Cautela was subjected to physical injury and pain.

85.   As a result of said excessive force by the RRT, Cautela sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**K.    William Chadwick**

86.    On May 2, 2016, Plaintiff William Chadwick was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

87.    Chadwick suffers from a mental illness and was not provided with his medication while at the Gwinnett County Jail. He is blind in one eye, which he believes was caused by an April 2011 incident with the RRT.

88.    Chadwick was alone in his cell and upset because they were out of toilet paper and he was having to use his bed sheets for that purpose. In order to get attention, he flooded his cell and blocked the door with his mattress. Nonetheless, he posed no threat of injury or escape, and even though his disruptive behavior warranted discipline, there was no justification for the use of violent force against him.

89.    The RRT responded by putting a canister of tear gas in a vent to the cell and then rushing in, shooting him with a shotgun full of beads which struck him in the left shoulder. The beads were apparently a nonlethal force application, but they caused him to suffer great pain. When he attempted to shield himself with the mattress, they jerked it out of his hands and dragged him out of the cell and put him in a restraint chair.

90.    At the time that such force was used against him, he was alone in a

29

contained environment and posed no present threat of injury or escape.

91. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Chadwick remained nonviolent and did not offer any physical resistance of any kind.

92. The RRT put Chadwick into a restraint chair even though there was no need for him to be placed in prolonged punitive restraint, and they left him restrained in the chair for several hours without regard for the fact that such restraint was not justified. While he was in the chair, he was in terrible pain and urinated on himself, so the RRT stripped him naked and put him in a shower. He was then placed in "the hole" for seven (7) days.

93. As a result of said excessive force by the RRT, Chadwick sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity

## L. Kevin Wesley Anderson

94. On November 10, 2013, Plaintiff Kevin Wesley Anderson was a pretrial detainee in the admissions area of the jail being asked intake questions by a

female deputy.

95.    While still in the admissions area, he was approached by two deputies in RRT uniforms who stood on each side of him and asked him how much he had to drink. "Enough," he responded.

96.    As soon as Anderson answered the question, the two deputies suddenly and without warning grabbed his arms and forced his arms behind his back in a forceful and violent way. He was not resisting the deputies and did nothing to be disruptive or non-compliant.

97.    When the deputies forced his arms behind his back, he yelled out in pain and felt his right shoulder snap. He previously had shoulder surgery in December of 2012 and had anchors in both shoulders.

98.    As they took Anderson to the holding cells next to the intake area, they forced his head into the wall by the cell door before opening it and putting him in the cell door.

99.    Once he was removed from the holding cell he immediately asked for medical attention. He had to file several requests for medical attention while at the jail. The medical staff did some X-rays and told Anderson his shoulder was separated. Anderson was told he would be taken for an orthopedic examination, but that never happened. The only thing they gave him for pain was a low dose of

Tylenol, which did nothing to lessen his suffering.

100. At the time of these events, Anderson was employed with Rocket.com WiFi. His job duties required him to pull fiber and coaxial cable, as well as hold his arms up above his head for long periods of time. As a result of the injuries he sustained at the Gwinnett County Jail due to excessive force used against him, he was no longer physically perform his job, at which he was employed for over fifteen (15) years.

101. The entire time when Anderson was confronted by deputies at the jail and subjected to excessive force, he had no weapons, he was in a contained environment, and he was unable to escape. At all times Anderson was compliant with any commands given to him and he was not posing a threat of injury to himself or anyone else. He did not damage any property. He did nothing to create a disturbance, or to incite any disturbance by other inmates.

102. As a result of being subjected to this unnecessary and excessive force by members of the Rapid Response Team, Anderson was subjected physical injury and pain, which prevented him from returning to his job.

103. As a result of said excessive force by the RRT, Anderson sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and

loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**M.    Diione Clay**

104.    On May 21, 2015, Plaintiff Diione Clay was a detainee in the Gwinnett County Jail who had excessive force used against him by the RRT.  He was alone in a cell or other contained environment when the force was used against him.  At the time, he posed no threat of harm or escape.

105.    The RRT suddenly entered the room without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

106.    Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Clay remained nonviolent and did not offer any physical resistance of any kind.

107.    The RRT put Clay into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

108.    As a result of said excessive force by the RRT, Clay sustained physical and emotional injuries, and is entitled to past and future noneconomic damages,

including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## N.   Markel Collins

109.   On approximately September 21, 2014, Plaintiff Markell Collins was a pretrial detainee in the Gwinnett County Jail who was alone in a cell when force was used against him by the RRT.

110.   Collins had been in the cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

111.   Markell Collins suffers from a mental illness. He should have been in the hospital instead of jail. The RRT was called because he was seen playing with his feces but there was no justification for using violent force against him.

112.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Collins remained non-violent and did not offer any physical resistance of any kind.

113. The RRT then strapped Collins into a restraint chair, even though there was no need for him to be placed in prolonged punitive restraint, and they hosed him down to the point that he believed they were trying to drown him.

114. As a result of said excessive force by the RRT, Collins sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## O.    Shawn Collins

115. On February 24, 2012, Plaintiff Shawn Collins was booked into the Gwinnett County Jail as pretrial detainee.  At the time, she was experiencing a psychotic break due to an adverse reaction to a medication. On several occasions during her incarceration, she was restrained and had force used against her by the RRT, but her memory of the details is clouded by her mental state.

116. She remembers being asked questions by the jail staff and being unable to answer them, and she heard a deputy say that she was completely "out of it."  She remembers signing and talking to herself, being in a manic state, and verbally venting frustrations about her job and financial stress while she was alone in a holding cell.  At some point she fell asleep and woke up the next morning, terrified

because she was strapped down by her ankles and wrists to a hard plastic table. She couldn't move, she was completely naked, and bleeding. She was terrified because she had no idea of what was going on, but after screaming and crying for what seemed like hours, a nurse came in and it was evident that she was receiving medical attention for her bleeding.

117.   Collins went back to sleep, and when she awoke she was still naked and bleeding profusely but no longer restrained. She started pacing around the cell and cursing out of frustration about work and why she was locked up. She looked out the window of her cell and noticed that male inmates and officers outside the cell could see her naked, which terrified and embarrassed her.

118.   After pacing around the cell, she was suddenly and unexpectedly attacked by a several deputies believed to be RRT members, who rushed into the cell and forced her to the ground, shoving her face into the cement floor. Her neck was twisted, along with her arms, and legs. She was strapped down to the table again. This happened repeatedly, several times a day, and she would be strapped to the table for hours at a time.

119.   While she was strapped to the table, she not allowed to use the restroom. If she cried or complained, she was attacked by the deputies and they would twist and turn her head and tighten the straps. This happened several times.

120. Each incident occurred after Collins had been in the cell for an extended period of time, where she posed no threat of injury or escape, when the RRT suddenly entered the cell without warning. They jumped on her, and while she was lying on the floor, several officers put their weight on her and deliberately applied pressure point techniques for the purpose of inflicting pain.

121. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Collins remained nonviolent and did not offer any physical resistance of any kind.

122. Each time the RRT strapped her to the table or tightened the restraints, there was no need for her to be placed in prolonged punitive restraint, yet they repeatedly left her restrained for hours without regard for the fact that such restraint was not justified.

123. When Collins' sister came to bail her out, jail staff advised her to take Collins to an emergency room to be checked out immediately, because her blood pressure was very high and her ankles and wrists were swollen from being repeatedly restrained. After getting evaluated and cleared by the hospital, Collins was prescribed more medication and advised to follow up with her primary care physician and a psychiatrist. The following week she was cared for by her

sister.  She could not return to work for another month.

124.   As a result of said excessive force by the RRT, Collins sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**P.      Marquise Conner**

125.   On January 23, 2013, Plaintiff Marquise Conner was a pretrial detainee in the Gwinnett County Jail who had excessive force used against him by the RRT. He was alone in a cell or other contained environment when force was used against him by the RRT.  At the time, he posed no threat of harm or escape.

126.   The RRT suddenly entered the room without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

127.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Conner remained nonviolent and did not offer any physical resistance of any kind.

128.   The RRT put Conner into a restraint chair, despite the fact that there

was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

129.   As a result of said excessive force by the RRT, Conner sustained physical injuries, and is entitled to past and future noneconomic damages, including damages for pain and suffering, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## Q.   John Levi Cook, III

130.   On a date to be determined[1], Plaintiff John Levi Cook, III was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

131.   At the time force was used against him, he was alone in a cell or other contained area for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

132.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Cook remained nonviolent and did not offer

---

[1] Plaintiffs will amend the complaint to provide further detail once the relevant records and/or video evidence has been produced by Defendants through discovery.

any physical resistance of any kind.

133. The RRT then put Cook into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

134. As a result of said excessive force by the RRT, Cook sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**R.    Darriell Cross**

135. On September 5, 2014, October 10, 2014, and November 27, 2014, Plaintiff Darriell Cross was a pretrial detainee in the Gwinnett County Jail. On all three occasions, he was alone in a cell or other contained area when force was used against him by the RRT.

136. Each incident occurred after Cross had been in a contained area for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning. They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

137. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Cross remained nonviolent and did not offer any physical resistance of any kind.

138. On each occasion, the RRT then put Cross into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

139. As a result of said excessive force by the RRT, Cross sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## S.   Xavier Daniels

140. On a date to be determined[2], Plaintiff Xavier Daniels was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

141. Daniels was in a contained area, where he posed no threat of injury or

---

[2] Plaintiffs will amend the complaint to provide further detail once the relevant records and/or video evidence has been produced by Defendants through discovery.

41

escape, when the RRT suddenly entered without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

142.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Daniels remained nonviolent and did not offer any physical resistance of any kind.

143.   Upon information and belief, the RRT then put Daniels into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

144.   As a result of said excessive force by the RRT, Daniels sustained physical injuries, and is entitled to damages for past and future pain and suffering, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**T.     Rahmeel Davis**

145.   On May 19, 2015, Plaintiff Rahmeel Davis was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

146.   At the time force was used against him, he was alone in a cell or other

contained area for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.  He was also shot in the head with a Taser, and he has suffered from mental disturbances ever since being released from the jail.

147.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Davis remained nonviolent and did not offer any physical resistance of any kind.

148.   The RRT then put Davis into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

149.   As a result of said excessive force by the RRT, Davis sustained serious physical injuries, and is entitled to past and future noneconomic damages, including damages for pain and suffering, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## U.   Tshombe Davis

150.   On November 19, 20016, Plaintiff Tshombe Davis was a pretrial

43

detainee in the Gwinnett County Jail when force was used against him by the RRT.

151.   At the time force was used against him, he was alone in a cell or other contained area for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

152.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Davis remained nonviolent and did not offer any physical resistance of any kind.

153.   The RRT then put Davis into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

154.   As a result of said excessive force by the RRT, Davis sustained physical and emotional injuries, including nerve damage to his hand and arm that is believed to be permanent.  He is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## V.    Justin Duchatellier

155.    On March 3, 2016, May 19, 2016, and June 10, 2016, Plaintiff Justin Duchatellier was a pretrial detainee in the Gwinnett County Jail who had excessive force used against him by the RRT.  On all three occasions, he was alone in a cell or other contained environment when force was used against him by the RRT.

156.    All three incidents occurred when Duchatellier was nonviolent and posed no present threat of injury or escape, when the RRT suddenly entered the room without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

157.    Duchatellier suffers from a mental illness and was being housed in the jail's mental health unit.  On one occasion the RRT used force against him because he knocked on the window of the telephone room, to which the RRT responded by carrying him to his cell and beating him, which left a scar that is still visible.  On another occasion he was asleep in his cell and they shot gas pellets into his cell to wake him up.  He was put in the restraint chair on at least one occasion.  He was not a posing a threat to anyone on any of the occasions when the RRT used force against him.

158.    Despite being subjected to such unreasonable and excessive force –

45

which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Duchatellier remained nonviolent and did not offer any physical resistance of any kind.

159.   As a result of said excessive force by the RRT, Duchatellier is entitled to damages for his past and future pain and suffering as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## W.   Patrick Bryan Echols

160.   On November 6, 2017, Plaintiff Patrick Bryan Echols was a pretrial detainee in the Gwinnett County jail when the RRT used excessive force against him.

161.   The RRT was waiting at the sallyport when he arrived because the arresting officer had radioed ahead that Echols was a "Delta."

162.   As soon as he arrived at the jail, the RRT put what appeared to be a sack over Echols' head and dragged him into the jail, even though he displayed no disruptive or non-compliant behavior to the receiving deputies.  Echols believed that he was being blindfolded in order to scare him, but the sack may have been a "spit mask" because he was spitting up blood from having had his face smashed into a door by the arresting officer at the scene of the arrest.

163.   Echols was taken inside the jail and thrown to the floor of a holding cell

where he was subjected to pressure on his leg, arms and back from several RRT members putting their knees and other parts of their body against Echols.

164. Echols yelled that they were breaking his leg. He did not understand why he was being treated the way he was since he had done nothing disruptive or aggressive toward anyone at the jail; apparently it was retaliation for his earlier unruly conduct at the time of his arrest.

165. Despite his protests the RRT continued to kneel on his back and neck and put pressure to his leg, even though he was handcuffed behind his back the entire time and on the floor, unable to be a threat to anyone.

166. Echols lost consciousness when he was hit in the head by one of the deputies while lying on the floor with several of the deputies on his back, legs and torso. He remained unconsciousness for an extended period of time.

167. The entire time when Echols was confronted by deputies at the jail and subjected to excessive force, he had no weapons, he was in a contained environment, and he was unable to escape. At all times Echols was compliant with any commands given to him and he was not posing a threat of injury to himself or anyone else. He did not damage any property. He did nothing to create a disturbance, or to incite any disturbance by other inmates.

168. The injuries sustained by Echols are severe headaches, pain to his legs,

47

pain to his chest muscles, pain to his arms, contusions and knots on his head, and abrasions to his face, back and arms. Since the incident, he has experienced night terrors, nightmares, panic attacks and depression.

169. As a result of said excessive force by the RRT, Echols sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## X.   Mulugeta Ejigu

170. Plaintiff Mulugeta Ejigu was a pretrial detainee in the Gwinnett County Jail on multiple occasions when force was used against him by the RRT, including but not limited to the following dates: September 15, 2012; January 10 and 12, 2013; and June 8, 10,11 and 15, 2013.

171. Upon information and belief, all of these incidents occurred while Ejigu was alone in a cell or other contained area after being there for an extended period of time, where he posed no threat of injury or escape, and where he was disruptive – for example, knocking on the cell door to get attention but not hard enough to harm himself or cause damage. On each occasion, the RRT suddenly entered the cell without warning. They jumped on him, and while he was lying on the floor, several

officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain. On some occasions, that included choking him by the neck.

172. Ejigu suffers from mental illness and was not receiving his medication while at the jail. As a result, there were incidents where he was not in his right mind, and using unnecessary force against him had the effect of agitating him further. Most of the time he was scared and withdrawn. He was picked on by other inmates while at the jail, which caused other inmates to be disciplined and led to retaliatory intimidation against him, which made him a target for both inmates and staff.

173. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Ejigu remained nonviolent and did not offer any physical resistance of any kind.

174. On multiple occasions, the RRT put Ejigu into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

175. After the last incident, which Ejigu believes was on June 15, 2013, he

was injured to the point that he was thereafter confined to a wheelchair. Upon information and belief, still has some degree of permanent disability as a result of the use of excessive force by the RRT.

176. As a result of said excessive force by the RRT, Ejigu is entitled to damages for his physical pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## Y.    Jacquelyn Glass

177. On at least two occasions, including August 16, 2016 and at least one unknown date in the 2014 to 2015 timeframe, Plaintiff Jacquelyn Glass was a pretrial detainee in the Gwinnett County Jail when force was used against her by the RRT.

178. Each time force was used against her by the RRT, she was alone in a cell or other contained area for an extended period of time, where she posed no threat of injury or escape, when the RRT suddenly entered without warning. They jumped on her, and while she was lying on the floor, several officers put their weight on her and deliberately applied pressure point techniques for the purpose of inflicting pain.

179. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Glass remained nonviolent and did not offer

any physical resistance of any kind.

180.   The RRT then put Glass into a restraint chair, despite the fact that there was no need for her to be restrained at all, and then left her restrained in the chair for several hours without regard for the fact that such restraint was not justified.

181.   As a result of said excessive force by the RRT, Glass sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## Z.   James Gleaton

182.   On October 18, 2016, Plaintiff James Gleaton was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.  The RRT was waiting for Gleaton when he arrived at the jail.

183.   Despite the fact that was in a contained environment and posed no present threat of injury or escape, the RRT jumped him and applied physical force and pressure to various parts of his body, aggravating a pre-existing hand injury and causing great pain.

184.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to

maintain order and discipline – Plaintiff Gleaton remained nonviolent and did not offer any physical resistance of any kind.

185.   The RRT put Gleaton into a restraint chair even though there was no need for him to be placed in prolonged punitive restraint, and they left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

186.   As a result of said excessive force by the RRT, Gleaton sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## AA.   Kelda Lisette Gordon

187.   On several occasions, including July 30, 2012, July 15, 2017, and May 10, 2018, Plaintiff Kelda Lisette Gordon was a pretrial detainee in the Gwinnett County Jail when force was used against her by the RRT.

188.   Upon information and belief, the RRT used force against Gordon – who suffers from epileptic seizures – when she was alone in a cell or other contained area for an extended period of time, where she posed no threat of injury or escape, when the RRT suddenly entered without warning.  They jumped on her, and while she was

52

lying on the floor, several officers put their weight on her and deliberately applied pressure point techniques for the purpose of inflicting pain.

189.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Gordon remained nonviolent and did not offer any physical resistance of any kind.

190.   The RRT then put Gordon into a restraint chair, despite the fact that there was no need for her to be restrained at all, and then left her restrained in the chair for several hours without regard for the fact that such restraint was not justified.

191.   As a result of said excessive force by the RRT, Gordon sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## BB.   Shannon Grose

192.   On August 20, 2016, Plaintiff Shannon Grose was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

193.   Grose had been in a holding cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell

without warning.  While he was tying his shoe, they jumped on him and slammed him to the floor.  They then forcibly placed him in four-point restraints so that blood could be drawn for a DUI test.

194.  Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Grose remained nonviolent and did not offer any physical resistance of any kind.

195.  The RRT then left him restrained for several hours after the blood test, without regard for the fact that such restraint was not justified.

196.  As a result of said excessive force by the RRT, Grose sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## CC.  Brandon Haddock

197.  On July 15, 2015, Plaintiff Brandon Haddock was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

198.  Haddock had been in a holding cell or other contained area for an extended period of time, where he posed no threat of injury or escape, when the RRT

suddenly entered without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

199.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Haddock remained nonviolent and did not offer any physical resistance of any kind.

200.   The RRT then put Haddock into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

201.   As a result of said excessive force by the RRT, Haddock sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**DD.   Irene Handy**

202.   On at least four separate occasions including but not limited to April 14, 2012, June 10, 2012, August 1, 2012, and January 24, 2013, Plaintiff Irene Handy was a pretrial detainee in the Gwinnett County Jail when force was used against her

by the RRT.

203.   Each incident occurred after Handy had been alone in a cell for an extended period of time, where she posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  They jumped on her, and while she was lying on the floor, several officers put their weight on her and deliberately applied pressure point techniques for the purpose of inflicting pain.

204.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Handy remained nonviolent and did not offer any physical resistance of any kind.

205.   Each time the RRT put Handy into a restraint bed even though there was no need for her to be placed in prolonged punitive restraint, yet they repeatedly left her restrained for several hours without regard for the fact that such restraint was not justified.

206.   A mental health patient in her late sixties, Handy was mouthy but not violent, and she verbally expressed anger and frustration about not being able to get a court date or to communicate with her attorney, and how the charges against her were a bunch of crap, but she was not violent or engaging in any behavior that was harmful to herself or anyone else, or which would justify her being forcibly

restrained.

207.   On one video which shows Handy being put in a restraint bed in response to her vociferous complaints, Handy repeatedly asks the RRT members why they are doing this to her.  "Discipline," one of them replies.  In addition to being restrained against her will for hours even though the restraint logs showed she was calm and not resisting, video also shows an officer putting her in a headlock.

208.   As a result of said excessive force by the RRT, Handy is entitled to damages for her physical pain and suffering as well as economic losses she may have suffered.

### EE.   Curtis Hardy

209.   On a date to be determined[3], Plaintiff Curtis Hardy was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

210.   Hardy was alone in his cell, where he posed no threat of injury or escape, when the RRT suddenly entered without warning to conduct a sweep.  They shot pellet guns and Hardy was hit by the pellets. They grabbed him from his bunk and forcefully threw him to the ground, where they deliberately applied pressure point techniques for the purpose of inflicting pain. Without warning they grabbed

---

[3] Plaintiffs will amend the complaint to provide further detail once the relevant records and/or video evidence has been produced by Defendants through discovery.

his arms and forced his arms behind his head in a forceful and violent way. He was not resisting the deputies and did nothing to be disruptive or non-compliant. They did not find anything as a result of their search.

211.    Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Hardy remained nonviolent and did not offer any physical resistance of any kind.

213.    As a result of said excessive force by the RRT, Hardy sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**FF.    Demetrius Harley**

214.    On at least three separate occasions including but not limited to December 5, 2012, December 6, 2012, and October 22, 2014, Plaintiff Demetrius Harley was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

215.    Each incident occurred after Harley had been alone in a cell for an extended period of time, where he posed no threat of injury or escape, when the RRT

suddenly entered the cell without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

216.  Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Harley remained nonviolent and did not offer any physical resistance of any kind.

217.  On at least one occasion, Harley tried to get the attention of the jail staff by knocking on his cell window and door, and then doing so progressively louder when nobody came to see what he wanted, but at no time striking the glass or door hard enough to cause injury to himself or damage to property.  On another occasion, the video shows him standing at the window showing officers his middle finger, but not doing anything that would constitute a physical threat of harm.

218.  Despite being disrespectful, Harley always complied with officers' instructions and did nothing to justify the use of physical force against him.

219.  Each time the RRT then put Harley into a restraint chair when there was no need for him to be placed in prolonged punitive restraint, yet they repeatedly left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

220. Due to the RRT's unreasonable use of force and restraint against him, Harley received bruises on his arms and legs and had soreness in his neck, back, arms and legs. Harley also suffers from mental illness that was aggravated by the RRT's use of excessive force.

221. As a result of said excessive force by the RRT, Harley sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## GG. Michael Heacock

222. On February 26, 2016, Plaintiff Michael Heacock was a pretrial detainee in the Gwinnett County jail when force was used against him by the RRT.

223. After having been arrested for DUI, he woke up in a holding cell and asked officers if he could call his employer to let them know he would be late for work. He became angry and frustrated at being ignored. After yelling that he had a job to get to, eventually the deputy who had previously ignored him took him from the holding cell to the booking area. The woman at the booking desk told him he could come to the front of the line, but the deputy who had escorted him to booking grabbed him and pulled him back. Heacock called him a "little man," and the deputy

retaliated by trying to slam Heacock's head into a wall.

224.    Then six members of the RRT rushed in and Heacock immediately laid down on the floor.  The RRT jumped on top of him, pressed their knees into his back and elbows into his head, applying pressure points for the purpose of causing pain.

225.    When the RRT used force against him, he had no weapons, he was in a contained environment, and he was unable to escape.  At all times Heacock was compliant with any commands given to him and he was not posing a threat of injury to himself or anyone else.  He did not damage any property.  He did nothing to create a disturbance, or to incite any disturbance by other inmates.

226.    As a result of said excessive force by the RRT, Heacock sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## HH.   Felicia Heiskell

227.    On April 9, 2015, Plaintiff Felicia Heiskell was a pretrial detainee in the Gwinnett County Jail when force was used against her by the RRT.

228.    Without provocation, she was attacked without warning by members of the RRT. At the time, she posed no threat, yet despite this, she was tazed and bruised.

They jumped on her, and several officers put their weight on her and deliberately applied pressure point techniques for the purpose of inflicting pain.

229.  Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Heiskell remained nonviolent and did not offer any physical resistance of any kind.

230.  As a result of said excessive force by the RRT, Heiskell sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## II.    Natasha Henderson

232.  On December 26, 2013, Plaintiff Natasha Henderson was a pretrial detainee in the Gwinnett County Jail when force was used against her by the RRT.

233.  It was the day after Christmas, and she had received money in her account to purchase items from the jail's canteen.  She was in the common room with other inmates trying to place an order on the computerized canteen system at 10:28 a.m., and she only had until 10:30 to complete the order.  Because she was focused on getting the order submitted on time, she did not hear something that a

female deputy said to her.  She asked the deputy for another minute to complete the order, and the deputy responded that she would lose an hour of free time, which was then almost immediately increased to two hours of lost free time.

234.   The deputy then told everyone to go to their cells, and Henderson started walking upstairs toward her cell along with all the other inmates.  As Henderson was going up the stairs, the Rapid Response Team entered the room and Henderson was ordered to come back down.  She complied with that instruction. She was also ordered to put her hands against the wall, where she was handcuffed.  Again, Henderson immediately complied, did exactly what she was told, offered no resistance, and did not question why she was commanded to do these things.

235.   The RRT walked her toward an isolation cell, and when the handcuffs slipped off her wrist, they tightened them and also added plastic flex cuffs so that her arms would be completely immobilized.  As she was dragged backwards into the isolation cell, her shoes came off.  One RRT member held down her legs and feet, and another lifted her up, and aggressively slammed her headfirst onto the concrete floor.

236.   As a result of having her head slammed to the floor, Henderson started screaming in pain, her ears ringing and her head pounding.  One of the officers told

her to shut up.  He jumped on top of her, put his weight on her, took his knee and put it against the back of her head and neck, and pushed her hard into the floor.  The other officer was still holding her legs and feet.  Henderson was still screaming in pain and one of the officers said, "Shut up, don't move," or he would use his Taser on her.  She said, "Why?  I can't move."  She was not moving and complied with their orders.

237.    After the incident, her pain was severe and her face was pounding.  A different officer came and questioned her about what happened to her face.  She was taken to the medical clinic but they refused to give any pain medication in case she had swelling of the brain.  They failed to take any x-rays.  She stayed in the medical section for approximately five (5) days but received no real treatment, and then was returned to isolation to serve out her punishment for having failed to comply with the deputy's instructions when using the computer.

238.    At no time did Henderson pose a present threat of injury or escape, and there was no justification for the RRT members to use violent force against her.

239.    Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Henderson remained nonviolent and did not offer any physical resistance of any kind.

240.    She continued to have significant physical pain long after her release from jail and was unable to sleep on one side of her face because it hurt so badly.

241.    As a result of said excessive force by the RRT, Henderson sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## JJ.    Alexander Henry

242.    On May 11, 2017, Plaintiff Alexander Henry was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

243.    Henry had been in a holding cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  They jumped on him and slammed him to the floor, and then they forcibly placed him in four-point restraints so that blood could be drawn for a DUI test.

244.    In the process, they punched Henry in the head, aggravating a previous injury for which he had been hospitalized for frontal lobe bleeding and seizures. Henry tried to explain this but they ignored him and slammed him down to be restrained.

245. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Henry remained nonviolent and did not offer any physical resistance of any kind.

246. The RRT then left him restrained for several hours after the blood test, without regard for the fact that such restraint was not justified.

247. As a result of said excessive force by the RRT, Henry sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## KK.  Diara Hood

248. On November 18, 20l3, Diara Na'Shay Darnai Hood was a pretrial detainee in the Gwinnett County Jail when excessive force was used against her by the RRT.

249. On that date, Hood asked the female deputy in charge of their pod for a roll of toilet paper because she and her cellmate had no toilet paper. The deputy told her she could not have any toilet paper because they are only allowed one roll per day per cell. Ms. Hood told the deputy that she did not think the deputy should

refuse someone toilet paper and that it was a violation of her rights. This angered the deputy who told Ms. Hood that she was not getting any toilet paper. As Ms. Hood walked away from the deputy other inmates were coming out and offering her toilet paper, which angered the deputy even more. This led to Hood being disciplined, which the deputy initiated by radioing that Hood was a "failure to comply."

250. The first responding deputy, a female who was apparently not an RRT member, ordered Hood to lie on the floor, and she complied immediately. Then, as the female deputy was handcuffing Hood without any resistance whatsoever, several RRT members rushed in to the room, pushing the deputy out of the way and causing her to fall over a chair.

251. The RRT then proceeded to place the combined weight of their bodies on Hood by kneeling on her back and legs and placing a foot on the back of her neck, all with great force. They took this action even though Ms. Hood was already compliant, lying prone on the floor, and in the process of being handcuffed when the RRT entered the room. The RRT continued to apply pressure to her body in order to cause pain. They also tightened their handcuffs in a way to bruise her wrists and cut off her circulation, which caused pain and future problems.

252. The members of the RRT pulled upward on her arms when she was

handcuffed, causing Hood additional pain and concern because she had previously dislocated her shoulder.   She told them about the dislocated shoulder, but they said that if her shoulder were dislocated she would be screaming out in pain.   Then they proceeded to lift her off the floor by her arms, causing her great additional pain, and carried her up the stairs by her arms handcuffed behind her back.

253.   They put her in the cell and held her up against the wall and told her that if she moved they would put her into the restraint chair.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Hood never offered any resistance and was fully compliant with every command.

254.   As a result of the excessive force used against her by the RRT, Hood sustained painful injuries to her back, neck, arms and shoulders.   She was seen in medical and had an x-ray taken, which apparently showed no dislocation or fractures, but it felt like her shoulder was popping out of place during certain arm movements after this incident.   She developed knots between her spine and her shoulders, as well as an abscess under her arm that became worse after the incident.   She was given medications for pain and inflammation caused by the RRT's use of force against her, but they were ineffective.

255.   As a result of said excessive force by the RRT, Hood is entitled to

damages for her past and future pain and suffering as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## LL.   Jeffrey Howard

256.   On January 16th, 20l3, Plaintiff Jeffrey Howard was a pretrial detainee in the Gwinnett County Jail when excessive force was used against him by the RRT. During the time that Howard was being processed into the facility, Howard was brought into a holding cell by four RRT members so that his blood could be drawn for a DUI test.

257.   Howard was handcuffed behind his back and escorted without incident to the cell, which contained a restraint bed.  Once inside, Howard requested to use the commode in the cell because he had to relieve himself, but that request was denied, and Howard was forcibly laid down on the restraint bed by the RRT members.  Howard asked why he was being treated this way since he had told them he would voluntarily provide a blood sample without any necessity for the use of force.

258.   Without responding, the RRT continued to apply force to his body including painful pressure on his neck and head.   They also applied pressure to Howard's body while laying him on his back on the restraint bed with his arms still handcuffed behind his back, causing even more pain and discomfort. Although

Howard repeatedly pointed out that he was not resisting and that he was cooperating, the deputies continued to subject Howard to application of pressure to his head and neck. Howard begged them to stop hurting him but the RRT officers did not respond.

259.   The police officer who had arrested him, who was also present in the holding cell, responded that he had a warrant which allowed the use of "reasonable and necessary force" to collect the blood sample.  Howard again stated that he would give blood voluntarily, but the RRT ignored him and continued to use *un*reasonable and *un*necessary force.

260.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Howard remained nonviolent and did not offer any physical resistance of any kind.

261.   As a result of said excessive force by the RRT, Howard sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**MM.  Devonte James**

262.   On or about January 28, 2014, Plaintiff Devonte James was a pretrial

detainee in the Gwinnett County Jail when force was used against him by the RRT.

263.  James had been alone in a cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

264.  Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff James remained nonviolent and did not offer any physical resistance of any kind.

265.  The RRT then put James into a restraint chair even though there was no need for him to be placed in prolonged punitive restraint, and they left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

266.  As a result of said excessive force by the RRT, James sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

71

## NN.   Davaughn Jones

267.   On or about January 28, 2014, Plaintiff Devaughn Jones was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT on at least two occasions.

268.   On each occasion, Jones had been alone in a cell for an extended period of time, where he posed no threat of injury to himself or others. He was laying down when the RRT suddenly entered the cell without warning. They fired pepperballs and, ignoring the fact that he remained in a submissive position, they jumped on him and twisted his arms. While he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

269.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Jones remained nonviolent and did not offer any physical resistance of any kind.

271.   At all times relevant herein, Jones suffered from a mental illness for which he required medication, but he did not receive his medications while he was in the jail, which caused him to be manic.  He recalls being put in a restraint chair at least three or four times while he was at the Gwinnett jail.  The last time he was put

in the chair, he was taken to solitary confinement and ultimately to a hospital.

272.   As a result of said excessive force by the RRT, Jones sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## OO.   D'Vonte Jordan

273.   On several occasions, including June 14 and 15, 2015, Plaintiff D'Vonte Jordan was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

274.   Each incident occurred after Jordan had been alone in a cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

275.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Jordan remained nonviolent and did not offer any physical resistance of any kind.

276.  On each occasion, the RRT then put Jordan into a restraint chair when there was no need for him to be placed in prolonged punitive restraint, yet they repeatedly left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

277.  As a result of said excessive force by the RRT, Jordan sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## PP.  Quentin Kemp

278.  On June 16, 2013, Plaintiff Quentin Kemp was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

279.  During intake, two officers misinterpreted his statement "be smart" and reacted by immediately ordering him to put his hands on the wall, which he did. They then lead him to a padded room, and he willingly walked with the officers to the room. Once he was alone in the room, where he posed no threat of injury or escape, the RRT rushed into the cell without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain, and

74

also violently manipulated his arm causing him to yell out in extreme pain.

280.    Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Kemp remained nonviolent and did not offer any physical resistance of any kind.

281.    The RRT then put Kemp into a restraint chair even though there was no need for him to be placed in prolonged punitive restraint, and they left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

282.    In the process of using force against him, the RRT injured his arm so badly that he thought it was broken, and after he was released from jail he went to the hospital for medical treatment, for which he was billed approximately $8,000.

283.    As a result of said excessive force by the RRT, Kemp sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## QQ.    Joseph Kollman

284.    On February 8, 2012 and on or about February 12, 2012, Plaintiff

Joseph Kollman was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT on two separate occasions.

285.   On the first occasion, Kollman had been alone in a cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

286.   Kollman had not slept in approximately two weeks due to insomnia related to a mental illness when the RRT came into his cell and ordered him get down on his knees.  Because he was unsteady on his feet, he asked if they could help him to his knees, and the RRT responded by pulling his hands behind his back, tripping him, pushing him forward and slamming the left side of his head onto the concrete floor while still holding his hands behind his back.

287.   Once he was on the floor, the RRT put a foot to the back of Kollman's neck with great force, causing Kollman to scream in pain. They also stomped on his lower back, which resulted in more pain and more screaming.   Kollman was then stripped down completely naked and left face down on the concrete floor.   He passed out and lost consciousness as they exited the cell.

288.   When Kollman awoke he was unable to move from the neck down.  He

76

laid there unable to move and petrified from fear for an undetermined amount of time until he finally began to feel tingling in his toes and fingers. After a while he was able to regain some movement, pushed himself up, and crawled to a wooden bench. He sat there for a while, noticed a green jail uniform on the bench, and put it on. While he was sitting, he started having seizures, which were observed by jailers he put him in a wheelchair and took him for medical treatment.

289. On the second occasion, which occurred on or about February 12, 2012, Kollman was being escorted to a regular housing unit when there was a disturbance involving other inmates and the RRT. An RRT member responding to that disturbance ordered several inmates, including Kollman, to put their hands against the wall, and Kollman was slow to respond because he was paranoid from had happened four days earlier and he was not involved in the disturbance that the RRT was responding to in the hallway. One of the RRT members came up behind Kollman and slammed his head into a concrete wall, causing him to suffer additional injury, allegedly because he had failed to comply with an order.

290. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Kollman remained nonviolent and did not offer any physical resistance of any kind on either occasion.

291.  As a result of said excessive force by the RRT, Kollman sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**RR.  William Lagemann**

292.  On April 18, 2016, Plaintiff William Lagemann was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

293.  Lagemann was in the admissions area being booked when he made a statement that the intake person did not like. As he continued to stsand calmly at the counter, the RRT suddenly approached him, grabbed his arms and put them behind his back. Langemann was fully cooperative. The RRT then pulled him away from the counter and slammed his head hard against the wall.

294.  Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Lagemann remained nonviolent and did not offer any physical resistance of any kind.

295.  The RRT then restrained Lagemann even though there was no need for him to be placed in punitive restraint, and they transported him to a cell without

regard for the fact that such restraint was not justified.

296.   As a result of said excessive force by the RRT, Lagemann sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**SS.   Gowayne Laing**

297.   On or about February 27, 2014 and August 18, 2016, Plaintiff Gowayne Laing was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT on two separate occasions.

298.   On both occasions, Laing had been alone in a cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

299.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Laing remained nonviolent and did not offer any physical resistance of any kind on either occasion.

300.   On both occasions, the RRT then put Laing into a restraint chair even though there was no need for him to be placed in prolonged punitive restraint, and they left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

301.   Laing is a disabled veteran whose condition was made worse by the RRT's inhumane treatment. The RRT's excessive force injured his back and dislocated his shoulder.

302.   As a result of said excessive force by the RRT, Laing sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## TT.   Sassia Lett

303.   On February 13, 2016, March 26, 2016, and March 31, 2016, Plaintiff Sassia Lett was a pretrial detainee in the Gwinnett County Jail who had excessive force used against her by the RRT.  On all three occasions, she was alone in a cell or other contained environment when force was used against her by the RRT.

304.   All three incidents occurred when Lett posed no present threat of injury or escape, with the RRT suddenly entering the room without warning.  They jumped

80

on her, and while she was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain. On one occasion when she was thrown to the floor, her chin struck the concrete and began bleeding profusely.

305.   Lett suffers from a mental illness that was causing her to behave erratically.  However, she was not a posing a threat to herself or anyone else on any of the occasions when the RRT used force against her.

306.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Lett remained nonviolent and did not offer any physical resistance of any kind.

307.   The RRT then put Lett into a restraint chair even though there was no need for her to be placed in prolonged punitive restraint, and they left her restrained in the chair for several hours without regard for the fact that such restraint was not justified.

308.   As a result of said excessive force by the RRT, Lett is entitled to damages for her past and future pain and suffering, both physical and mental, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## UU.   Ryan Long

309.   On several occasions on at least two separate dates, including but not limited to February 19, 2017 and February 23, 2017, Plaintiff Ryan Long was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

310.   Each incident occurred when Long posed no threat of injury or escape. They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

311.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Long remained nonviolent and did not offer any physical resistance of any kind.

312.   Long was put in the restraint chair several times. The first time was because he was uncooperative in the booking process.  Other times he was talking back and was beaten up for that.  While moving him to the restraint chair, they would ram his head on things in the hallway.  During the takedowns they bent and twisted his arms, punched him in the ribs, and left bruises on his body.

313.   Each time the RRT then put Long into a restraint chair when there was

no need for him to be placed in prolonged punitive restraint, yet they repeatedly left him restrained in the chair for just under four hours without regard for the fact that such restraint was not justified, and the fact that he was logged as sitting quietly in the chair the entire time.

314.    As a result of said excessive force by the RRT, Long sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## VV.    Rodolfo Lopez

315.    On April 26, 2017, Plaintiff Rodolfo Lopez was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.  Lopez had been alone in a cell for an extended period of time, where he posed no threat of injury or escape.  He needed to use the toilet but there was no toilet paper, so he was hitting the door to get the staff's attention.

316.    In response, the RRT suddenly entered the cell without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.  They grabbed him by his right ear and used pressure points on his

neck.

317.    Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Lopez remained nonviolent and did not offer any physical resistance of any kind.

318.    The RRT then put Lopez into a restraint chair when there was no need for him to be placed in prolonged punitive restraint, yet they repeatedly left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.  When they put him in the chair, they told him he would learn his lesson.

319.    They threw him in the chair, hurting his hand while also pressing on his head. He had a prior operation on his right leg which was aggravated by the RRT. They injured his knee and it still hurts when he moves it.  He has nerve damage, as well as permanent damage to his right ear as a result of the RRT's use of force against him.

320.    As a result of said excessive force by the RRT, Lopez sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical

expenses,      lost      income,      and      loss      of      earning      capacity.

**WW.   Donovan Lowe**

321.   Plaintiff Donovan Lowe was a pretrial detainee in the Gwinnett County Jail on several occasions when force was used against him by the RRT, including but not limited to August 21, 2018.  On that day, he had a seizure in the booking area – having had a medical history of seizures for more than ten years – which resulted in his being forcibly placed in a restraint chair by the RRT.

322.   Other incidents occurred while Lowe was alone in a cell or other contained area after being there for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning.

323.   On each occasion where the RRT used force against Lowe, they jumped on him and took him down to the floor, where several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

324.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Lowe remained nonviolent and did not offer any physical resistance of any kind.

325.   On each occasion, the RRT put Lowe into a restraint chair, despite the

fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

326.    After being subjected to the use of force by the RRT, Lowe suffered a subdural hematoma, as well as loss of vision in one eye.  Other injuries attributed to the RRT include bruising to his face, arms, legs, and neck; possible nerve damage; pain in his neck, arms, ankle, foot, shoulder and leg; headaches; nightmares; and trouble sleeping.

327.    As a result of said excessive force by the RRT, Lowe is entitled to damages for his physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## XX.    Brandon Mahome

328.    On March 14, 2012, Plaintiff Brandon Mahome was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

329.    Mahome had been in a holding cell or other contained area for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.  They shot him with pepper balls, jumped on him, and while he was lying on the floor, several officers put their weight on him, bent

86

his arms and legs, and deliberately applied pressure point techniques for the purpose of inflicting pain.

330.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Mahome remained nonviolent and did not offer any physical resistance of any kind.  Apparently the force was used in response to Mahome's repeated requests to be allowed to make a phone call.

331.   The RRT then put Mahome into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

332.   As a result of said excessive force by the RRT, Mahome sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## YY.   Devon Marion

333.   On July 13, 2011, Plaintiff Devon Marion was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

334.   Upon information and belief, Marion was in a contained area where he

posed no threat of injury or escape, when the RRT suddenly entered without warning and used force against him.

335.   Upon information and belief, the RRT jumped on him and took him down to the floor, where several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

336.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Marion remained nonviolent and did not offer any physical resistance of any kind.

337.   The RRT then put Marion into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified. In fact, he was unconscious when he was put in the chair.

338.   When Marion regained consciousness, he was in the restraint chair. The jail staff did not take a mugshot of him, and he believes it was because he was injured with his eyes were swollen shut, and when he was removed from the chair he could hardly walk.

339.   As a result of said excessive force by the RRT, Marion is entitled to damages for his physical and mental pain and suffering, both past and future, as well

as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## ZZ.   Shane Mattadeen

340.   On September 12, 2016, Plaintiff Shane Mattadeen was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

341.   Mattadeen was in a contained area, where he posed no threat of injury or escape, when the RRT suddenly entered the unit where he was housed without warning and proceeded to use unreasonable and unjustified force against the inmates in that unit.   This raid, which was purportedly to search for contraband, was conducted in retaliation for an incident the previous day in which two inmates in that unit – neither of whom was Mattadeen – shouted profane insults to an officer.

342.   The RRT struck Mattadeen with elbow strikes and slammed him face first into the cell wall, breaking his nose and causing it to spurt large quantities of blood.   He also received a chipped tooth and neck and back injuries as a result of being beaten by the RRT.   He did not receive adequate medical treatment at the jail but was eventually transferred to federal custody, where he underwent reconstructive surgery on his nose and sinuses.   He was scheduled to have a second surgery but was transferred back to Gwinnett before it could done, all of which has aggravated and prolonged his pain and suffering caused by the RRT.

343. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Mattadeen remained nonviolent and did not offer any physical resistance of any kind.

344. As a result of said excessive force by the RRT, Mattadeen sustained serious injuries, and is entitled to past and future noneconomic damages, including damages for physical pain and suffering as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## AAA.  Chauncey McCalla

345. On February 9, 2015 and December 1, 2015, Plaintiff Chauncey McCalla was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT on two separate occasions.

346. Each time, McCalla was alone in a cell or other contained area after being there for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.

347. On each occasion where the RRT used force against McCalla, they jumped on him and took him down to the floor, where several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

348.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff McCalla remained nonviolent and did not offer any physical resistance of any kind.

349.   On at least one occasion, the RRT put McCalla into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.   At one point, he was put in the restraint chair in the shower and shot with a Taser, causing him to become incapacitated.

350.   As a result of said excessive force by the RRT, McCalla is entitled to damages for his physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## BBB.   Gregory McCormick

351.   On March 4, 2016, Plaintiff Gregory McCormick was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

352.   McCormick was calmly standing at the booking desk being processed into the jail, when an officer walked by and told him to take his hands out of pockets. He removed them but spoke back to the officer, which caused the officer to

immediately grab him and pull his arms behind his back. Even though McCormick complied and did not resist, several RRT officers then came and started bending his arms causing him pain. Even though he was in a contained area and had already been searched for weapons, and he posed no threat of injury or escape, he was tackled to the floor.

353. Once he was down to the floor, more members of the RRT arrived. They hit him, twisted his arms, put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

354. The RRT then grabbed McCormick by the arms and carried him out of the room. They forced him into restraints, despite the fact that there was no need for him to be restrained at all, and transported him to a cell without regard for the fact that such restraint was not justified. Once in the cell he was taken out of the restraints and he was unable to breathe. The nurse arrived and was unable to obtain his vitals. An oxygen tank was brought to help him breathe. He was in severe pain and bleeding from behind his right ear.

355. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff McCormick remained nonviolent, and the only resistance was caused by his involuntary reaction to the extreme pain being

inflicted by the RRT.

356.    While the RRT was twisting his arms, McCormick felt his shoulder pop. His shoulder was permanently injured and he has been unable to sleep with his arms above his head ever since.

357.    As a result of said excessive force by the RRT, McCormick is entitled to damages for his physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## CCC.   Mathias Nwagbara

358.    On July 10, 2014, Plaintiff Mathias Nwagbara was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

359.    Nwagbara had been in a holding cell or other contained area for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

360.    Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Nwagbara remained nonviolent and did not

93

offer any physical resistance of any kind.

361.    The RRT then put Nwagbara into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

362.    As a result of said excessive force by the RRT, Nwagbara sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**DDD.   Jamon O'Neil**

363.    On February 7, 2015, Plaintiff Jamon O'Neil was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.  He was met by the RRT when he arrived at the jail.  One officer pulled him out of the patrol car by the head while another pushed him from the other side.  The RRT was told that O'Neil had assaulted an officer, but that was not true and that charge was dropped.

364.    O'Neil was then put in a holding cell, where he posed no threat of injury or escape, and he started beating on the door because he wanted someone to tell him why he was being falsely accused of assaulting an officer.  The RRT responded by suddenly entering the cell without warning.  They jumped on him, and while he was

94

lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

365.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff O'Neil remained nonviolent and did not offer any physical resistance of any kind.

366.   The RRT then put O'Neil into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.  He was strapped to the chair so tightly that it broke the skin on his wrists, and eventually a female officer came in and loosened the restraints.

367.   As a result of said excessive force by the RRT, O'Neil sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## EEE.   Justin Owen

368.   On July 15, 2015, Plaintiff Justin Owen was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

369.   Owen had been in a holding cell or other contained area for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.  They also applied pressure to his neck and choked him to the point of unconsciousness.

370.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Owen remained nonviolent and did not offer any physical resistance of any kind.

371.   The RRT then put Owen into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

372.   As a result of said excessive force by the RRT, Owen sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**FFF.    Miguel Perez**

373.    Plaintiff Miguel Perez was a pretrial detainee in the Gwinnett County Jail on February 15, 2013 and March 10, 2013 when force was used against him by the RRT on two separate occasions.  On both occasions, he was alone in a cell and not posing a threat to anyone.

374.    On the first occasion, Perez standing in the glass wall cell holding a Bible with his arms open and extended.  Clearly no threat, he suffers from mental illness and has a very slender build.  Suddenly and without warning, the RRT rushes in without giving any commands.  As Perez stands there holding a Bible, they tackle him and throw him to the floor, twisting his body violently and applying pressure to his legs, back and arms as he screams out in pain.   They slam him into the restraint chair and leave him there for over four hours even though the log shows he is sitting there quietly the entire time.

375.    On the second occasion, Perez was standing in a different cell, creating no disturbance and posing no threat when the RRT gathered outside the cell. Then the RRT proceeded to shoot 16 rounds of gas pellets into the cell through a slot in the door, waiting for the gas to take effect.   An RRT member gave muffled commands through a gas mask and Perez stood quietly, making hand gestures suggesting that he did not understand what was said.  The gas set off a smoke alarm

97

and eventually the RRT rushed in, tackling Perez to the floor, applying pressure to various parts of his body, and taking off his clothes as Perez screamed in pain.

376.  Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Perez remained nonviolent and did not offer any physical resistance of any kind on each of the above occasions.

377.  Each time, the RRT put Perez into a restraint chair when there was no need for him to be placed in prolonged punitive restraint, yet they left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

378.  As a result of said excessive force by RRT members, Perez is entitled to damages for his physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## GGG.  Ivan Prokopovich

379.  On October 21, 2012, Plaintiff Ivan Prokopovich was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

380.  Prokopovich was contained in a holding cell, where he posed no threat of injury or escape, when the RRT suddenly entered the cell without warning and

jumped on him.  They grabbed and twisted his body, yanked on his arms, and caused his shoulder to pop out of place.  The RRT then put Prokopovich into a restraint chair even though there was no need for him to be placed in prolonged punitive restraint, and they left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

381.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Prokopovich remained nonviolent and did not offer any physical resistance of any kind.

382.   He was apparently being punished for reacting to the arresting officer, who had looked into the window of the holding cell and made a face at Prokopovich, provoking him to strike the thick glass loudly enough to show his displeasure but not hard enough to cause injury.  In any event, that conduct had ceased and there was no present justification for the use of force or restraints against him.

383.   As a result of said excessive force by the RRT, Prokopovich sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## HHH.   Donald Michael Reeves

384.   On a date to be determined[4], Plaintiff Donald Michael Reeves was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

385.   Reeves was alone in his cell, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.  They grabbed him, shoved him, and hit him several times while conducting a sweep of the cell. Without warning they grabbed his arms and forced his arms behind his head in a forceful and violent way.  He was not resisting the deputies and did nothing to be disruptive or non-compliant. They did not find anything as a result of their search.

386.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Reeves remained nonviolent and did not offer any physical resistance of any kind.

388.   As a result of said excessive force by the RRT, Reeves sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and

---

[4] Plaintiffs will amend the complaint to provide further detail once the relevant records and/or video evidence has been produced by Defendants through discovery.

loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### III.   Jonathan Riley

389.   Plaintiff Jonathan Riley was a pretrial detainee in the Gwinnett County Jail on July 27, 2011 when force was used against him by the RRT.

390.   He was alone in a cell or other contained area, where he posed no threat of injury or escape.   Through the window of his cell door, he saw an officer taking a young boy into an office, which was inconsistent with Riley's understanding that two officers needed to be present for any interaction with a minor.  He knocked on the glass, trying to get someone's attention and express his concerns, until the officer and the boy came back out.

391.   Thirty or forty minutes later, the RRT suddenly entered Riley's cell without warning.  They jumped on him and took him down to the floor, where several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

392.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Riley remained nonviolent and did not offer any physical resistance of any kind on each of the above occasions.

393.   The RRT put Riley into a restraint chair when there was no need for him to be placed in prolonged punitive restraint, yet they left him restrained in the chair for several hours without regard for the fact that such restraint was not justified. When they put him in the chair, they twisted his head backwards to cause pain.

394.   As a result of said excessive force by RRT members, Riley is entitled to damages for his physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

### JJJ.   Curtis Lee Rogers

395.   On February 16, 2017, Plaintiff Curtis Lee Rogers was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT. Rogers had been alone in a cell for an extended period of time, where he posed no threat of injury or escape.

396.   The RRT entered the cell suddenly and without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

397.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Rogers remained nonviolent and did not

offer any physical resistance of any kind.

388. The RRT then put Rogers into a restraint chair when there was no need for him to be placed in prolonged punitive restraint, yet they repeatedly left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

399. As a result of said excessive force by the RRT, Rogers sustained physical injuries and prolonged restraint, and is entitled to past and future noneconomic damages, including damages for physical pain and suffering, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## KKK.  Clifford Rousseau

400. On July 4, 2015, Plaintiff Clifford Rousseau was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

401. Rousseau was alone in a cell or other contained area, where he posed no threat of injury or escape, when the RRT suddenly entered without warning. They jumped on him and took him down to the floor, where several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

402. Despite being subjected to such unreasonable and excessive force –

which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Rousseau remained nonviolent and did not offer any physical resistance of any kind.   Rousseau was being punished for arguing with an officer, but he did not pose any threat at the time force was used against him by the RRT.

403.   The RRT put Rousseau into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

404.   As a result of said excessive force by the RRT, Rousseau is entitled to damages for his physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## LLL.   Hosea Scott

405.   On or about August 28 and 29, 2016, Plaintiff Hosea Scott was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT on several occasions.

406.   Each time, Scott was alone in a cell or other contained area, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.

407.   On each occasion where the RRT used force against Scott, they jumped

on him and took him down to the floor, where several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain. On at least one occasion, they also tazed him.

408. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Scott remained nonviolent and did not offer any physical resistance of any kind.

409. On each occasion, the RRT put Scott into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

410. As a result of said excessive force by the RRT, Scott is entitled to damages for his physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

**MMM. Nicole Smith**

411. Plaintiff Nicole Smith was a pretrial detainee in the Gwinnett County Jail on multiple occasions when force was used against her by the RRT, including but not limited to the following dates: April 20, 22, 28 and 30, 2013; May 2, 6, 10,

105

13, 14, 21, 23 and 24, 2013; June 29, 2013; July 6, 20, 26 and 27, 2013; August 11, 13, 15, 17, 22, 23 and 24, 2013; September 5, 8 and 11, 2013; August 22, 2014; and December 6, 2017.

412.   Each incident occurred while Smith was alone in a cell or other contained area after being there for an extended period of time, where she posed no threat of injury or escape.

413.   On each occasion, the RRT suddenly entered the cell without warning. They jumped on her, and while she was lying on the floor, several officers put their weight on her and deliberately applied pressure point techniques for the purpose of inflicting pain.   On some occasions, she was completely naked when the officers jumped on her.   She was tazed on multiple occasions, requiring that she go to the hospital at least twice for Taser related injuries.   She has been prescribed medication for nerve damage caused by the RRT's Tasers.  She was repeatedly bruised and battered by the RRT.

414.   Despite being repeatedly subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Smith was never violent toward the officers or others whenever the RRT used force against her.

415.   Nicole Smith suffers from a mental illness.  She had not been diagnosed

and did not realize she suffered from this until after 2014 after her initial incidents at the jail. The RRT's repeated use of force against her constitutes torture and is tantamount to punishing her for her illness.

416.    On each occasion, the RRT put Smith into a restraint chair, despite the fact that there was no need for her to be restrained at all, and then left her restrained in the chair for several hours without regard for the fact that such restraint was not justified.

417.    As a result of said excessive force by the RRT, Smith is entitled to damages for her physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## NNN.    Terry Smith

418.    On January 1, 2013, Plaintiff Terry Smith was a pretrial detainee in the Gwinnett County Jail when force was used against her by the RRT.

419.    Smith was alone in a cell or other contained area after being there for an extended period of time, where she posed no threat of injury or escape, when the RRT suddenly entered without warning.

420.    On each occasion where the RRT used force against Smith, they jumped on her and took her down to the floor, where several officers put their weight on her

and deliberately applied pressure point techniques for the purpose of inflicting pain. They also shot her with a Taser.

421.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Terry Smith remained nonviolent and did not offer any physical resistance of any kind.

422.   The RRT then put Smith into a restraint chair, despite the fact that there was no need for her to be restrained at all, and then left her restrained in the chair for several hours without regard for the fact that such restraint was not justified.

423.   As a result of said excessive force by the RRT, Smith is entitled to damages for her physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## OOO.   Darce Stelly

424.   On June 29, 2016, Plaintiff Darce Stelly was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

425.   Upon information and belief, Stelly had been in a holding cell or other contained area for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.  They jumped on him, and

while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

426. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Stelly remained nonviolent and did not offer any physical resistance of any kind.

427. The RRT then put Stelly into a restraint chair, despite the fact that there was no need for him to be restrained at all. He was restrained in both a restraint chair and a restraint bed for several hours without regard for the fact that such restraint was not justified.

428. As a result of said excessive force by the RRT, Stelly sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**PPP.   Nicolas Stewart**

429. On February 16, 2017, Plaintiff Nicolas Stewart was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

430. Upon information and belief, Stewart had been in a holding cell or other

109

contained area for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning. They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

431. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Stewart remained nonviolent and did not offer any physical resistance of any kind.

432. Upon information and belief, the RRT then put Stewart into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

433. As a result of said excessive force by the RRT, Stewart sustained physical injuries, and is entitled to damages for physical pain and suffering, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## QQQ.  Brandon Turner

434. On or about July 15, 2015, Plaintiff Brandon Turner was a pretrial detainee in the Gwinnett County Jail when force was used against him by the RRT.

435.   Turner had been in a holding cell for an extended period of time, where he posed no threat of injury or escape, when the RRT suddenly entered without warning.  They jumped on him, and while he was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.  He was apparently being punished because he was unwilling to put on a dirty shirt that had stains on it, since he did not know what the stains were.

436.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Turner remained nonviolent and did not offer any physical resistance of any kind.

437.   The RRT then put Turner into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

438.   As a result of said excessive force by the RRT, Turner sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## RRR.  Melissa Ward

439.   On November 30, 2013, Plaintiff Melissa Ward was a pretrial detainee in the Gwinnett County Jail when force was used against her by the RRT.

440.   Ward was met by the RRT when she arrived at the jail.  Even though was in a contained area where she posed no threat of injury or escape, the RRT forcibly seized her and took her directly to a restraint chair.

441.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Ward remained nonviolent and did not offer any physical resistance of any kind.

442.   The RRT then put Ward into a restraint chair, despite the fact that there was no need for her to be restrained at all, and then left her restrained in the chair for several hours without regard for the fact that such restraint was not justified.

443.   At time of the incident, Ward was disabled due to a leg injury that was aggravated by the RRT's use of force against her.  One of the straps of the restraint chair cut deeply into her leg, which had staples in it from having undergone multiple surgeries, leaving a bad scar which looks like a shark bite.  She went to the hospital for treatment immediately upon her release.

444.   As a result of said excessive force by the RRT, Ward is entitled to

112

damages for her physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

**SSS.   Justice Lamar Warren-Franklin**

445.   Plaintiff Justice Warren-Franklin was a pretrial detainee in the Gwinnett County Jail on several occasions when force was used against him by the RRT, including but not limited to March 22 and 23, 2015 and April 7, 2015.

446.   On the first occasion, he was in a holding cell trying to clean blood out of a splint he had on his right arm, which had recently gone through surgery.  Steel plates and screws had been implanted in the arm, and the incision was held together by staples. The RRT was called to remove him from the cell and take him to medical.

447.   An RRT member escorting Warren-Franklin to medical shoved him for no good reason, and Warren-Franklin told him not to do that because he could fall and reinjure himself. The RRT member retaliated by grabbing his arms and pulling them behind him, handcuffing the left one and twisting the right one that had just been through surgery.  Warren-Franklin tried to guard his splinted right arm, and the deputy applied more pressure to the left arm to deliberately cause pain.

448.   The second instance occurred in the medical section when they were trying to x-ray Warren-Franklin's arm.  Warren-Franklin initially refused treatment,

113

which was within his rights, because he did not trust them and was afraid because of the way he had been handled earlier, and the deputy who was with him called other RRT members and ordered Warren-Franklin to get down on the floor.  While he was trying to get down on the floor without hurting his arm, the deputy rushed him and struck him in the throat with a brachial stun to force him to the floor.  Even though he was already on the floor, the other deputies jumped on him and he was kicked in the face.  Then the RRT put him in a restraint chair.

449.   The third time was about two weeks later, when Warren-Franklin was repeatedly asking to be sent to the hospital.  His arm was turning colors and the surgical staples were coming out of his arm.   A deputy told him to *eat* the staples if they were bothering him, so he ate two staples thinking that would force them to take him to the hospital.  Instead, the RRT put him in a restraint bed for several hours as punishment, even though there was no justification for prolonged punitive restraint and even though he had literally complied with the deputy's instruction.

450.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Warren-Franklin remained nonviolent and did not offer any physical resistance of any kind on each of the above occasions.

451.   After being subjected to the use of force by the RRT, Warren-Franklin

114

suffered injuries to his right arm and right hand. After being released from the jail, he had to have additional surgery on his arm for the metal titanium plates to be replaced in the proper position and the screws and plates had to be realigned because of the force that had been applied by the deputies.

452. As a result of said excessive force by RRT members, Warren-Franklin is entitled to damages for his physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## TTT.   Julian Williams

453. On December 25, 2016, Plaintiff Julian Williams was a pretrial detainee being booked into the Gwinnett County jail. An officer instructed Williams to take off his hoodie, and Williams began to take it off slowly – but not quickly enough to satisfy the officer. In response, several RRT members jumped Williams and tackled him to the floor. They twisted his body and applied pressure points to cause pain.

455. The entire time when Williams was confronted by deputies at the jail and subjected to excessive force, he had no weapons, he was in a contained environment, and he was unable to escape. At all times Williams was compliant with any commands given to him and he was not posing a threat of injury to himself or anyone else. He did not damage any property. He did nothing to create a

disturbance, or to incite any disturbance by other inmates.

456. As a result of said excessive force by the RRT, Williams sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## UUU. Mary Wilson

457. On a date to be determined[5], Plaintiff Mary Wilson was a pretrial detainee in the Gwinnett County Jail who had excessive force used against her by the RRT. She was alone in a holding cell when force was used against her by the RRT. At the time, he posed no threat of harm or escape.

458. The RRT suddenly entered the room without warning. They jumped on her, and while she was lying on the floor, several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

459. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Williams remained nonviolent and did not

---

[5] Plaintiffs will amend the complaint to provide further detail once the relevant records and/or video evidence has been produced by Defendants through discovery.

116

offer any physical resistance of any kind.

460.   Upon information and belief, the RRT put Williams into a restraint bed or chair, despite the fact that there was no need for her to be restrained at all, so that they could draw her blood for a DUI test.

461.   As a result of said excessive force by the RRT, Williams sustained physical and emotional injuries, and is entitled to past and future noneconomic damages, including damages for severe physical and mental pain and suffering and loss of enjoyment of life, as well as past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## VVV.   Rashida Womack

462.   On September 29, 2014, Plaintiff Rashida Womack was a pretrial detainee in the Gwinnett County Jail when force was used against her by the RRT.

463.   Womack was alone in a holding cell where she was calm and posed no threat of injury or escape, when the RRT suddenly entered without warning. This was in response to her banging on the door to her cell earlier, in an attempt to get someone's attention because there was a sandwich left for her just outside her door that she was unable to get to.  This behavior had ended long before the RRT entered her cell.

464.   The RRT sprayed pepperball hot shot into her cell, jumped on her and

117

took her down to the floor, where several officers put their weight on her and deliberately applied pressure point techniques for the purpose of inflicting pain. She screamed out for help and felt like she was going to die from the pain.

465.   Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Womack remained nonviolent and did not offer any physical resistance of any kind.

466.   The RRT then put Womack into a restraint chair, despite the fact that there was no need for her to be restrained at all, and then left her restrained in the chair for several hours without regard for the fact that such restraint was not justified.

467.   As a result of said excessive force by the RRT, Womack is entitled to damages for her physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## WWW.   William Gerald Young

468.   On September 19 or 20, 2012, Plaintiff William Gerald Young was a pretrial detainee at the Gwinnett County jail.  He was placed in a holding cell while waiting to be processed into the facility.

469.   While Young was waiting in the holding cell, he knocked persistently

118

on the glass to get someone's attention. When the jail staff finally gave him attention, it was in the form of four RRT members rushing in to the cell and taking him to the floor, despite the fact that he was not being aggressive or non-compliant. He was not engaging in any behavior which was a danger to anyone, nor was he destructive of any property at the jail. He was simply knocking on the door to get attention, and there was no justification for the use of force against him.

470. On each occasion where the RRT used force against Young, they jumped on him and took him down to the floor, where several officers put their weight on him and deliberately applied pressure point techniques for the purpose of inflicting pain.

471. Despite being subjected to such unreasonable and excessive force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Young remained nonviolent and did not offer any physical resistance of any kind.

472. The RRT then put Young into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for several hours without regard for the fact that such restraint was not justified.

473. As a result of being subjected to the use of excessive force by the RRT, Young experienced bruising, back pain, neck pain, arm pain, ankle and foot pain,

shoulder pain, leg pain, trouble sleeping, and nightmares.

474.   As a result of said excessive force by the RRT, Young is entitled to damages for his physical and mental pain and suffering, both past and future, as well as any past and future economic damages, including medical expenses, lost income, and loss of earnings.

## VI.   EXCESSIVE FORCE CLAIM

475.   As inmates, Plaintiffs have a Fourteenth Amendment right to be free from the use of excessive force against them, and the Fourth Amendment requires that any force used against a pretrial detainee be objectively reasonable under the totality of the circumstances.

476.   There was no factual or legal justification at any time relevant herein for the RRT to use the above described force against Plaintiffs.

477.   Plaintiffs were subjected to the use of excessive force in violation of the Fourth Amendment – as applied to pretrial detainees by the Fourteenth Amendment and decisions of the Supreme Court and Eleventh Circuit – because the force used against them by the RRT was not objectively reasonable, was not necessary to maintain or restore discipline, and was gratuitous, unnecessary, and entirely punitive.

478.   Defendants Sims and Conway have supervisory liability under 42

120

U.S.C. §1983 for the violation of the constitutional rights of Plaintiffs because Sims and Conway directed, encouraged, and caused the use of unreasonable and excessive force by the RRT or, alternatively, because the deliberate indifference of Defendants Sims and Conway to the constitutional rights of Plaintiffs and other inmates proximately caused the RRT to use such unreasonable and excessive force.

479. Accordingly, Defendants are liable for violating the Fourth and Fourteenth Amendment rights of Plaintiffs.

## VII.  CLAIM FOR DAMAGES

480. As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have been deprived of their constitutional rights, have suffered bodily injuries and physical restraint, have endured and will continue to endure significant physical and mental pain and suffering and emotional distress, and have suffered actual damages that will be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

481. Plaintiffs are entitled to recover compensatory damages from Defendants resulting from Defendants' unlawful conduct as alleged herein.

482. Because the conduct of Defendants was malicious, intentional, and carried out in bad faith, and because Defendants acted with deliberate indifference and conscious indifference to constitutional rights, Plaintiffs are entitled to recover

punitive damages from Defendants.

483. Plaintiffs are also entitled to recover reasonable attorney's fees under 42 U.S.C. §1988.

484. The unconstitutional conduct at issue in this case violated clearly established law of which a reasonable jail supervisor would have known, and Defendants are not entitled to qualified immunity.

## VIII. **<u>PRAYER FOR RELIEF</u>**

**WHEREFORE,** Plaintiffs respectfully pray that this Court:

(a)    Cause process to issue;

(b)    Conduct a trial by jury on all issues;

(c)    Enter judgment awarding compensatory damages to compensate Plaintiffs for damages incurred as a result of Defendants' unlawful conduct;

(d)    Enter judgment awarding Plaintiffs punitive damages in an amount sufficient to punish Defendants for their unlawful conduct and to deter Defendants and others from similar unlawful conduct in the future;

(e)    Award attorney's fees and expenses of litigation to counsel for Plaintiffs;

(f)    Tax all costs of this action against Defendants; and

(g)    Award Plaintiffs such other relief as this Court deems appropriate.

## A JURY TRIAL IS HEREBY DEMANDED.

Respectfully submitted this 28th day of November, 2018.

*/s/ Craig T. Jones*
CRAIG T. JONES
Georgia Bar No. 399476

CRAIG T. JONES, P.C.
Post Office Box 129
Washington, Georgia 30673
(706) 678-2364
craigthomasjones@outlook.com

*/s/ John G. Cicala, Jr.*
JOHN G. CICALA, JR.
Georgia Bar No. 125624

LAW OFFICE OF JOHN G. CICALA, JR., P.C.
P.O. Box 640
Grayson, Georgia 30017
(770) 879-5959
litigator.jgc@gmail.com

*/s/ Alison R. Spiers.*
ALISON R. SPIERS
Georgia Bar No. 672129

ALISON R. SPIERS P.C.
P.O. Box 681961
Marietta, Georgia 30068
(404) 980-0969
alison@spierslaw.com

*Attorneys for Plaintiffs*
